McALLISTER, ADMINISTRATRIX OF McALLISTER, *v.* CHESAPEAKE & OHIO RAILWAY COMPANY ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.

No. 748. Submitted January 30, 1917.—Decided March 6, 1917.

An order of a District Judge allowing a writ of error from this court and containing a recital that the judgment was based solely upon lack of jurisdiction supplies the place of the certificate required by § 238, Judicial Code.

An allegation in a petition for removal that the plaintiff's motive in joining resident and nonresident defendants is to prevent removal to the federal court is not in itself sufficient ground for removal, but specific facts supporting the charge of fraud must be alleged.

When the plaintiff's petition states a case of joint liability in tort under the state law against a resident and a nonresident defendant and the petition to remove the case on the ground that it contains a separable controversy fails to aver facts showing that the joinder is fraudulent, the District Court must remand.

Under the law of Kentucky a railroad company, though not required by speed laws, must nevertheless take notice of the places where numerous people are accustomed to cross or otherwise to be upon its tracks, and, by moderating speed, maintaining proper look-out, and giving proper signals, must exercise due care to save them from injury by trains. Failure to observe this duty resulting in injury or death is actionable negligence.

Under the law of Kentucky lessor and lessee railroad companies are jointly liable for injury or death inflicted on persons on the

tracks, not trespassers, by the negligence of the lessee in operating trains.

A petition averring that plaintiff's decedent, while at or near a public crossing in a town where numerous people were accustomed to be and travel, as lessor and lessee companies well knew, and while in plain view of their agents and servants, was negligently and wantonly run down and killed, without fault on his part, by a train operated by the lessee, and specifying that the negligence consisted in excessive speed—fifty miles an hour,—failure to keep proper look-out for travelers at such a place, and failure to give adequate signals or warnings of the approaching train—states a cause of action against both companies under the law of Kentucky.

198 Fed. Rep. 660, reversed.

THE case is stated in the opinion.

*Mr. Allan D. Cole, Mr. W. T. Cole* and *Mr. H. W. Cole* for plaintiff in error.

*Mr. E. L. Worthington, Mr. W. D. Cochran, Mr. Le-Wright Browning* and *Mr. Proctor K. Malin* for defendants in error.

MR. JUSTICE CLARKE delivered the opinion of the court.

On March 26, 1902—fifteen years since—the plaintiff filed her petition in the Circuit Court of Greenup County, Kentucky, against The Chesapeake & Ohio Railway Company, a corporation organized under the laws of Virginia, hereinafter called the Virginia company, lessee, and The Maysville & Big Sandy Railroad Company, a corporation organized under the laws of Kentucky, hereinafter called the Kentucky company, the owner and lessor of the railway on which plaintiff's decedent, on March 15th, 1902, was run down by a passing train and so injured that he soon thereafter died.

In due time, the Virginia company filed a petition for removal of the cause to the Circuit Court of the United

States for the Eastern District of Kentucky, in which petition it is alleged: That there is in the case a, separable controversy which is wholly between citizens of different States, the petitioner, a corporation of Virginia, and the plaintiff, a citizen of Kentucky; that the Kentucky corporation is not a necessary or proper party to the cause, which can be determined between the Virginia company and the plaintiff without reference to the Kentucky company; and that the Kentucky company is "wrongfully, fraudulently and falsely" made a party for the sole purpose of preventing removal to the federal court without any intention on the part of the plaintiff of proving against it any of the acts of negligence alleged in the petition. It is charged that no cause of action is stated in the amended petition against the Kentucky company.

On May 24, 1905, the plaintiff filed a motion to remand the case to the state court, on the ground that the federal court "is without jurisdiction to hear and determine the cause," which motion was overruled on the same day. Various consent continuances carried the case over for two and one-half years, until December 27, 1907, when the plaintiff filed a motion to set aside "the order heretofore made denying her motion to remand this cause," and in support of this motion, on the same day, she filed an answer to the petition for removal which is, in substance, a detailed denial of all of the allegations of that petition.

On the twenty-fifth of the following May (1908) plaintiff's motion to reconsider the court's ruling denying her motion to remand the case was submitted, and thirty days given for filing a brief, but it was not decided until a year later when, on May 24th, 1909, it was overruled. Again various continuances by consent caused the case to go over for three years more, until May 27th, 1912, when the plaintiff's motion to reconsider the court's action in overruling her motion to remand was again overruled. Then follow other continuances, aggregating two

years more, until, on May 25th, 1914, on motion of the defendant, the case was dismissed for want of prosecution, in an order which four days later was set aside, and again nothing was done for eighteen months, until December 15th, 1915, when the case was a second time dismissed for want of prosecution, in an order which was revoked on the twenty-fourth of the following July, at which 'time the former action of the court in overruling plaintiff's motion to remand the case was re-affirmed, and the plaintiff, having elected to stand on her motion to remand and "refusing to recognize the jurisdiction of the United States court or to proceed with the prosecution of her cause therein," upon motion, it was dismissed at plaintiff's costs.

On the next day the District Judge allowed a writ of error to this court in an order, reciting that plaintiff's petition had "been dismissed by a judgment of this court upon consideration solely of the question of this court's jurisdiction of the action."

The case is properly in this court, the order of the District Judge being sufficient to take the place of the certificate required by § 238 of the Judicial Code. *Excelsior Wooden Pipe Co.* v. *Pacific Bridge Co.*, 185 U. S. 282; *Herndon-Carter Co.* v. *James N. Norris, Son & Co.*, 224 U. S. 496, 498.

The validity of the denial of the plaintiff's motion to remand the case, which is thus brought before us, must be determined upon the allegations of the amended petition and of the petition for removal. *Madisonville Traction Co.* v. *Saint Bernard Mining Co.*, 196 U. S. 239, 245, when tested by the laws of Kentucky, *Illinois Central R. R. Co.* v. *Sheegog*, 215 U. S. 308; *C. & O. Ry. Co.* v. *Cockrell*, 232 U. S. 146, 153. Fully recognizing this rule, the District Court decided the motion on the face of the pleadings, and its reasons for refusal to remand the case as stated in *McAllister* v. *Chesapeake & Ohio Ry. Co.*, 157 Fed. Rep. 740, 744, are, that the Kentucky company had lawful authority

to lease its railroad to the Virginia company, *McCabe* v. *M. & B. S. R. R. Co.*, 112 Kentucky, 861; that the allegation of plaintiff's amended petition that plaintiff's decedent was injured "at or near a public crossing" is an admission that he was a trespasser on the railroad track at the time, *Davis' Admr.* v. *C. & O. Ry.*, 116 Kentucky, 144; and that the lessor company is not liable for injury to a trespasser by the negligence of its lessee. These reasons were restated at length by the District Judge when he denied the motion to reconsider his refusal to remand.

This conclusion of the District Court that the allegation of the amended petition that the deceased "at the time of the injuries complained of was at or near a public crossing in said town of Fullerton" is an admission that he was a trespasser at the time, is based, we think, upon an insufficient statement of the allegations of the amended petition, and upon much too narrow a view of the effect of the decisions of the Kentucky Court of Appeals as applied to the facts pleaded in this case.

The allegations of the amended petition are:

That since before the year 1890 the Virginia company had been operating the line of railway owned by the Kentucky company under a lease "which in no wise relieves" the lessor "from liability for the torts of the" operating lessee, and that, on March 15th, 1902, when plaintiff's decedent "was at or near a public crossing, . . . a place in the said town of Fullerton where numerous people were accustomed to be and travel," as the defendants well knew, without fault on his part, and while in plain view of the agents and servants of the defendants, he was "negligently and wantonly" run down and killed by a train operated by the defendant, the Virginia company. The negligence alleged is excessive speed of the train—fifty miles an hour,—failure to keep proper lookout for travelers at such a place, and failure to give adequate signals or warnings of the approaching train.

In the case cited by the court in its opinion, *Davis' Administrator* v. *C. & O. Ry. Co.*, 116 Kentucky, 144, the petition alleged that "the intestate was run over and killed 'at or near' a private crossing over the railroad track, between her house and garden," that it was "not far" from public crossings to the east and west of her, and that the train was negligently running at fifty miles an hour, without any appropriate lookout being kept or signals given.

In considering this petition the Court of Appeals, saying that it must be taken most strongly against the pleader, decided, that the allegation that the deceased was killed "at or near a private crossing" must be construed as meaning that she was killed at a place on the track other than at the crossing, and that it is only at a public crossing that reckless speed or any failure to give signals amounts to negligence.

The differences between this decided case and the case at bar are obvious and vital—a private crossing in the one, a public crossing in the other, and "a place where numerous people were accustomed to be and travel" in the one case, and silence as to the extent of use in the other. We shall see the Court of Appeals laying sharp hold upon both of these distinctions when determining what the state law applicable to such cases is.

Whatever doubt there may have been before, as to what duty the operating railroad company owed to the plaintiff's decedent, was settled by the decision in *Illinois Central Ry. Co.* v. *Murphy's Administrator*, 123 Kentucky, 787, in which the Court of Appeals, in a comprehensive survey of its prior decisions, formulates in two "principles" or rules, the duty of the operating railroad company to persons crossing or walking along its tracks. The first of these is that in sparsely-settled districts, or where few people cross or walk along railroad tracks, such users are to be regarded as trespassers to whom no duty is owed by

the company, except to keep from injuring them if it reasonably can, after their presence and peril shall have been discovered.

The second principle, and it is the one applicable to the case stated in the amended petition, is, that in more populous communities, or where many people are accustomed to cross or otherwise use railroad tracks, the duty of the company is

"to operate the train with the fact of the trespasser's presence in mind—that is, at a speed which has the train under control, and keeping such a lookout as will enable the operatives to give timely warnings of its approach, as well as to stop it in case of necessity before injury has been inflicted on the trespasser. Legislation has not regulated the speed of trains in such communities. Each case must rest till then upon its own facts. Whether the speed is so great as to amount to negligence will be a fact to be determined by the jury, for the circumstances will necessarily vary, according to the population, the use of the track for passage by foot or vehicle travelers, the obstruction to the view, and so forth.

"If the railroad company knows that the public habitually uses its tracks and rights of way in a populous community as a foot passway, so that it knows that at any moment people may be expected to be found there, such knowledge is treated as equivalent to seeing them there, and their presence must be taken into consideration by the train operatives in the movement of their trains."

Six years later, in *C. & O. Ry. Co.* v. *Warnock's Administrator*, 150 Kentucky, 74, and, oddly enough, in a case growing out of an accident which occurred in this same village of Fullerton, the Court of Appeals again reviews its decisions, approves the statement of the law in the *Murphy Case*, as we have quoted it, and concludes with the statement that:

"Although Fullerton was not an incorporated town,

it was a town in fact; and the place where the accident occurred [described as 60 feet from any public crossing] was such a locality that the presence of persons upon the track might be anticipated at any time."

Again recurring to the subject, the same court in *Corder's Administrator* v. *C. N. O. & T. P. Railway*, 155 Kentucky, 536, restates the rule, saying:

"It is not so much whether the accident occurred in the city or village as it is that there there was evidence of such long and continued use of the foot path by a large number of people as to impose upon the railroad the duty of giving warning of the approach of its trains to this point. . . . It is the nature and use of the crossing by the public that is to determine the applicability of the rule, which requires the lookout duty."

And yet, again, in *Willis' Administrator* v. *L. & N. R. R. Co.*, 164 Kentucky, 124, the same court concludes another discussion of its decisions with the approval of the *Warnock* and *Carter Cases* and adds:

"Running through all these opinions will be found the thought that it is the habitual use of the track by large numbers of persons rather than the location of the track that creates the distinction between trespassers and licensees."

*Watson's Administrator* v. *C. & O. Ry. Co.*, 170 Kentucky, 254, the last decision dealing with this subject, plainly is not intended to modify the rule we have thus seen so long established.

While these decisions of the Court of Appeals of Kentucky leave something to be desired in the definition of the distinction between "trespassers" and "licensees," there can be no doubt that, regardless of the terms of designation used, the result of them is that the allegations of the amended petition in the case under consideration, if supported by appropriate testimony would require that the case be sent to a jury under a proper charge of

the court and that it was error for the trial court to hold
that they did not state a cause of action as against the
lessee, operating, company.

There remains only the question whether the amended
petition states a cause of action against the lessor, the
Kentucky company, and it is very clear that the decisions
of the highest court of that State answer this question in
the affirmative.

In *McCabe's Admx.* v. *Maysville & Big Sandy R. R. Co.*
(this same Kentucky corporation), 112 Kentucky, 861, the
Court of Appeals of Kentucky expressly decides that under
the lease of its line to the Virginia company, which was in
effect when the action complained of occurred, the lessor
company, notwithstanding the lease, continued liable to
the public for the torts of its lessee in operating the leased
railroad, holding that where both lessor and lessee were
joined as defendants in a suit for causing the wrongful
death of a man killed by an engine operated by the lessee,
the liability was joint, and that a removal petition, not
to be distinguished in substance and scarcely in form from
the one filed by the Virginia company in this case, did not
state a case of a separable controversy, justifying removal
to the United States court. To this same effect, constru-
ing the constitution and statutes of Kentucky, as applied
to leases by other corporations, are *Illinois Central Ry. Co.*
v. *Sheegog's Admr.*, 126 Kentucky, 252, affirmed in 215
U. S. 308; and *Louisville Bridge Co.* v. *Sieber*, 157 Kentucky,
151. The plaintiff's decedent was not an employee of the
Virginia company and the rule of the cases cited is not
modified by *Swice's Admx.* v. *Maysville & Big Sandy R. R.
Co.*, 116 Kentucky, 253.

Since the amended petition states a joint cause of ac-
tion against the Kentucky company and the Virginia
company, the claim that there is a separable controversy
in the case, justifying removal by the latter company,
must fail, and since no facts are alleged in support of the

charge that the joinder of the two companies is fraudulent, except that it was made for the purpose of preventing removal to the federal court, this claimed reason for removal must also fail, *Illinois Central R. R. Co.* v. *Sheegog* and *C. & O. Ry. Co.* v. *Cockrell, supra,* and therefore the decision of the District Court is reversed and the case must be remanded to the state court.

The petition for removal of this case was filed on the twenty-first day of July, 1902, and now, fifteen years after, in directing that the case be remanded, we cannot fail to notice the many seemingly needless delays to which it has been subjected, and we direct that appropriate action be taken to return it as promptly as possible to the state court.

*Reversed.*